Scribner, J.
On the 6th cf March, 1893, the plaintiff, Amelia Bardshar, as administratrix of the estate of her deceased husband, Solomcn Bardshar, instituted proceedings in the court of common pleas of this county upon a nóte and mortgage, executed to her deceased husband, during his lifetime, on the 9th of November, 1887, by the defendants, John and Joseph Holtzman. The mortgage to secure the same was executed by the defendant John Holtzman alone, the note was signed by John Holtzman alone, and the mortgage also appears to be signed by John Holtzman alone. Somewhere in the course of the proceeding, I will probably come upon it as I proceed, Joseph Holtzman’s name appears in connection with the transaction. The mortgage was executed by ’ John Holtzman upon certain property, described in the proceeding as twenty-two and one-half acres, lying in the south half of the north half of lot 13, Catawba Island township, except five acres in the west end of the twenty-two and one-half acre tract, now owned by John Burgdorfer. The petition charges the payment to the executor, and avers there is now due tc the administratrix of Solomon Bardshar, $452.70, with interest from 1893; that this mortgage was filed on the 15th day of November, 1888, and that Joseph Holtzman, Henry Ritter and Phoebe J. Schemoneck, defendants, have or claim some interest by way of mortgage on the premises.
The petition avers that whatever interest the said Phoebe Schemoneck had, has been fully satisfied, and that whatever interest said Ritter or Joseph Holtzman had was subordinate to the plaintiff’s lien. The interest of Phoebe Schemoneck does not appear.
John Holtzman filed an answer and cross-petition on the 25th of April, 1898, and he says that on the 5th day of March, 1892, he sought to convey to one Edward Roehrs eight acres of land, before described, covered by the mortgage, and also the right of way along the line of the said twenty-two and one-half acre tract. He avers that Roehrs is a necessary party; that as a part of the consideration of said sale to him, said Roehrs assumed and agreed to pay the note and mortgage set forth in the petition. He further 'avers that at that time, to-wit, the 5th day of March, 1892, Geo. E. St. Jchn was the authorized agent of Bardshar, since deceased, authorized to collect the mortgage money for-the recovery of which the action is brought; that on the 5th day of March, 1892, Roehrs paid Bardshar through St. John, the sum of $400 in full of the amount then due. The answer and cross-petition of Holtzman then proceeds: “John *670 Holtzman, this defendant, claims a lien upon said real estate in the sum of $400, as part of the purchase money thereof, and prays judgment accordingly. ”
Edward Roehrs, to whom Holtzman says he conveyed the eight acres, and who, as Holtzman insists, was to pay the mortgage debt of Bardshar’s, answers on the 22d of November, 1893, and he says that on or about the 5th day of March, 1892, he paid to Bardshar, through Geo. E. St. John, who was then his agent, the full amount of the promissory note sued upon and accrued interest. Bardshar’s administratrix replies to this on the 15th day of May, 1893,and denies that St. John was the agent of Bardshar to collect the amount due upon the note and mortgage and set up in the petition, and denies that on March the 5th, 1892, or at any other time, Roehrs paid Bardshar through St. John the sum of $500, as the full amount of the principal and interest then due on said note, or any other sum whatever, at any time, to apply on or to release said mortgage; denies all knowledge of the sale of Holtzman to Roehrs, or that Roehrs agreed to pay said note and mortgage, or that Bardshar was in any manner a party to said agreement, or that any part of said note and mortgage has been paid. And Bardshar, as administrator, also replies to the answer of Edward Roehrs, December 14, 1893, and denies each and every allegation therein contained.
It appears by the testimony bearing upon this branch of the case as between Bardehar’s estate and Holtzman and Roehrs, that some negotiations were carried on by and between St. John and Bradshar, then in full life, by which St. John was endeavoring to secure a purchaser to make a purchase and secure a transfer of the Bardshar note for $420, and it further appears in the testimony uncontradicted in the case, that Roehrs had, as a point of faot, by some arrangement, plaoed in St. John’s hands $400, with which to take up that note.
According to St. John’s testimony, whioh is confirmed by Cashier Zollinger of Sandusky, St John met Zollinger at the Third National Bank of Sandusky some few months before Bardshar’s death, and a considerable discussion took place between them upon the subjeot of the sale or the surrender of the note to St. John for the sum of $400. According to the testimony, there was a good deal of hesitancy on the part of Bardshar and a good deal of disinclination on his part tc accept less than the sum of $420 — the interest making the $420, there being some arrears of interest accumulated on *671 it; but the testimony shows that Bardshar finally agreed to accept the $400; he had the note with him, hut he didn’t have the mortgage, and St. John refused to pay the money or accept the note until the mortgage was also placed in the hands of the cashier of the bank, or in his hands. In order to complete the transaction, Bardshar, it would seem, finally consented to look up the mortgage and bring it in and deposit it with Zollinger, and when he had done so, Zollinger was to deliver him Mr. St. John’s oheck for $400. The oheck and note were pinned together and placed in charge of Zollinger. But Bardshar never brought in the mortgage, never consummated the transaction. The note and mortgage executed by St. John remained in the bank for perhaps two or three months,and finally, the transaction never being completed, Mr. St. John went to the bank and lifted his cheok and destroyed it, leaving the note there without asking to control it or claiming any right or interest in it. It seems by correspondence produced that after the death of Bardshar, St. John renewed his application for the note and mortgage. The letters were addressed to Mrs. Barshar, administratrix, requesting papers to be produced, but no attention was ever paid to this request, and the note and mortgage remained in her hands as administratrix, after the death of her husband, and it is upon this that this suit is brought by her.
Now, regarding the transaction detailed by the testimony as to the sale of the note and mortgage to Mr. St. John, neither Mr. Bardshar nor his representatives were entitled -to the check for $400, until he or they prcduoed the mortgage,and the transaction was not completed or consummated until the mortgage was produced. Bardshar had no right, was not authorized to lift the check until he thought proper to produce the mortgage, and we cannot view the trasacticn as otherwise than incomplete and not consummated, and that at the death of Mr. Bardshar under the conditions then existing, he must be regarded and his representatives must now be regarded as entitled to the note and mortgage, and that neither St. John nor Mr. Roehrs, who, it seems, he was acting for, have any right to interpose in the matter.
Another issue is made between the estate to Bardshar and one Henry Ritter. He files his answer and cross-petition in the case on the 10th day of March, 1898, and says that on the 20rh day of January, 1888, John and Joseph Holtzman executed and delivered to Geo. E. St. John, their promissory note of that date for $2,000, at three years after said *672 date, with interest at seven per oent. per annum payable annually, the note being payable to the order of Mr. St. John. That, on the same date, to seoure the payment of the note, the defendant, John Holtzman, executed and delivered to said St. John, his mortgage on the premises described — twenty-two and one-half aores, excepting five acres hereafter described.
Said mortgage was duly left for record on the 24th day of January, 1888, at one o’cock P. M., and was duly recorded on that date securing said note in the usual form. On the 26th of January, 1888, for a gO( d and valuable consideration, St. John sold said note to defendant Henry Ritter,and at the same time assigned and transferred to him the said mortgage, and he has ever since remained and still is the owner and holder thereof. The amount is unpaid, and he claims an account for the amount due and for judgment,and general relief.
Now, the administratrix of Bardshar answers this cross-petition on the 24th of November, 1898, and says that she admits the execution and delivery .of the mortgage described in Ritter’s answer and cross-petition, and avers that the mortgage was taken by St. John at a date later than the Bardshar mortgage, with full knowledge on the part of St. John of Bardshar’s mortgage and that it was unpaid. The second mortgage was taken and plaoed upon record with fraudulent intent to prefer the same to the mortgage given to Bardshar. Plaintiff is informed, believes, and charges that at the time of the execution of the second mortgage to St. John, he was the duly authorized agent of defendant, Henry Ritter, to whom said mortgage was immediately assigned; that the money paid by St. John to the said John Holtzman was the money of Ritter placed in the hands of St. John for the purpose of taking said mortgage, with full knowledge on the part of Ritter of the Bardshar mortgage, and the further averment is made that Joseph Holtzman has ample security for said note.
Henry Ritter replies to this answer of the Bardshar administratrix denying explicitly and emphatically the allegations therein contained. He says that for reply to the. answer of Amelia L. Bardshar, administratrix, he has no means of knowledge whether the allegation that his mortgage was taken by the said Geo. E, St. John, and he therefore denies the said allegation, and denies that the Baid second mortgage was taken by St. John and placed upon the records by St. John wish fraudulent intent, etc , (reading the whole reply).
*673 Now, under the denials contained in this reply and the material allegations contained in the anwer of Mrs. Bardshar and of Mr. Ritter, it devolves upon the administratrix to show, by preponderance of the evidence, that St. John did take this mortgage as the agent of Ritter, and with knowledge on his part of the existence of a former mortgage, and that it was given as the purchase money, cr that Ritter himself had such knowledge at the time he took the mortgage.
Now, we axe unable to find testimony in the case to establish the claim on the part of the administratrix of the Bardshar estate that Ritter had any knowledge of the existence of this mortgage of Bardshar’s, or that St. John was acting as the agent of Ritter in taking that mortgage. In fact, St. John testifies, of course thereby admitting that he had knowledge of the Bardshar mortgage, that it was agreed between him and Bardshar, when he took his mortgage, that his mortgage should have priority over the Bardshar mortgago. That is the direot, positive testimony of St. John upon that point, that Bardshar agreed with him when he took the mortgage and afterwards transferred it to Ritter, that that mortgage should go upon record before the Bardshar mortgage was placed upon the record, and that testimony cn the part of St.John is not contradicted by any evidence in the case. Of course,it could not be very well contradicted, because Mr. Bardshar is deceased, and there is no one to speak for him in the matter; but independently of that, Ritter flatly denies that St.John was acting as his agent,and the testimony in the cáse does not establish that St. John was acting as Ritter’s agent. If it appears from the evidence in the case that St. John was the agent of Ritter in that transaction, and that thereby his knowledge was the knowledge of Ritter’s, why, unquestionably, from the doctrine of the courts, Ritter would be bound by St. John’s knowledge. But, we are unable to find 'from the testimony before us that St. John was acting in that capacity, although there are circumstances in the case which tend to excite suspicion in that regard. The fact that St. John shortly after transferred it to Ritter, and the fact that Ritter, upon receiving it, paid him over the money, as would appear in the case, would create the suspicion that St. John in taking the mortgage, was aoting for Ritter. But the proof is not such as would warrant us in finding that'St. John was filling that relation. The result is that the decree will here be substantially the same as in the court of common pleas.